**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brenda J. Smith, | No. CV12-8170 PCT DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Brenda J. Smith applied for disability insurance benefits on November 16, 2007, claiming to have been disabled as of March 3, 2006. Tr. 144. Her claim was denied on April 17, 2008 (Tr. 85-88), and upon reconsideration on September 4, 2008 (Tr. 90-92). Plaintiff was granted a hearing in which she appeared before an Administrative Law Judge ("ALJ") on May 13, 2010. Tr. 31. The ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. 13-26. The ALJ's decision became Defendant's final decision when the Appeals Council denied review on June 27, 2012. Tr. 1-43. Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). Doc. 1. The Parties have not requested oral argument, and Plaintiff did not file a reply brief. For reasons that follow, the Court will affirm Defendant's decision.

## I.      Standard of Review.

Defendant's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but

less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*   In determining whether the decision is supported by substantial evidence, the Court must consider the record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it. *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998).   The Court cannot affirm the decision "simply by isolating a specific quantum of supporting evidence." *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975); *see Robbins*, 466 F.3d at 882.

**II.   Analysis.**

For purposes of Social Security benefits determinations, a disability is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505.   Determining whether a claimant is disabled involves a five-step evaluation.   The claimant bears the burden in steps one through four of showing that (1) she is not engaged in a substantial gainful activity, (2) she has a severe medically determinable physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") precludes her from performing her past work.[1]   If at any step the Commissioner determines that a claimant is or is not disabled, the analysis ends; otherwise it proceeds to step five.   The Commissioner bears the burden at step five of showing that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v).

The ALJ found at step one that Plaintiff had not engaged in substantial activity since her alleged onset date.   Tr. 15.   At step two, the ALJ found that Plaintiff suffered from the following severe combination of impairments:   complex regional pain syndrome

---

[1] RFC is the most a claimant can do in light of the limitations caused by her impairments.   *See Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989); 20 C.F.R. § 416.945 (a); SSR 96-8p, 1996 WL 374184 (July 2, 1996).

vs. reflex sympathetic dystrophy of right lower extremity; status-post left knee arthroscopy with partial medial meniscectomy, and chondroplasty of patellofemoral compartment in June 2006; status-post right knee arthroscopy with partial medial meniscectomy and chondroplasty of the patellofemoral joint in July 2007; asthma; and obesity.  *Id.*  The ALJ determined at step three that none of these impairments or their combination met or equaled a listed impairment.  Tr. 17.  The ALJ then considered the entire record and determined that Plaintiff's RFC included the following restrictions:  sit for a total of six hours in an eight-hour workday, and for 30 minutes at one time; stand and/or walk for a total of two hours in an eight-hour workday, and for one to two hours at a time; lift up to 10 pounds frequently and up to 20 pounds occasionally; severe restrictions inability to squat, crawl, and climb, and inability to work at unprotected heights and around moving machinery; moderate restrictions inability stoop and bend, inability to drive automotive equipment, and inability to be exposed to dust, fumes and gases; mild limitations in concentration, in interpersonal relationships, and inability to cope with stress and consistency of effort or productivity.  Tr. 18.  At step four, the ALJ determined that Plaintiff was not disabled because she was capable of performing her past relevant work.  Tr. 24.  In the alternative, at step five, the ALJ concluded that Plaintiff was not disabled because she was capable of performing other work that existed in significant numbers in the national economy.  Tr. 25-26.

Plaintiff argues that the ALJ erred by improperly rejecting her allegations of disabling pain (Doc. 12 at 6-7), by rejecting the medical opinion of a treating source (*id.* at 8), and by misinterpreting evidence to the detriment of Plaintiff (*id.* at 5-6).  The Court will address each argument in turn.

### A.    Plaintiff's Subjective Testimony.

Plaintiff testified that she is unable to drive, and that the last time she drove was in 2007 or 2008.  Tr. 39.  Since then, Plaintiff's family provides her with rides, including a ride to visit her husband in Oklahoma in September 2009 and a trip to Minnesota for a family reunion in 2008.  Tr. 39-41.  Plaintiff testified that in 2007 she helped her husband

1    with his taxicab business by answering telephones.  Tr. 59-60.  Plaintiff testified that she

2    tried driving for her husband both before and after her knee surgeries, but was unable to

3    drive in both instances.  Tr. 60.

4         Plaintiff testified that Dr. Joel Rohrbough, M.D., performed surgery on her left

5    knee in 2006 and her right knee in 2007.  Tr. 43-44.  Plaintiff testified that she has

6    arthritis and swelling in both knees.  Tr. 44.  She stated that after the second surgery her

7    right knee "ended up with some nerve damage or something going on with the nerves

8    where as it was in constant pain or it just doesn't work right.  It swells tremendously, and

9    simply stops me from lifting my leg and walking correctly."  Tr. 44.  She stated that she

10   has problems picking up both legs, for example stepping on a stool, and that standing or

11   sitting for too long causes her to have major pain.  Tr. 45.  Plaintiff testified that she

12   suffers from reflex sympathetic dystrophy ("RSD"), which causes swelling in her ankles,

13   knees, and legs.  Tr. 48.  Plaintiff testified that the pain in her leg is constant, but

14   sometimes it is not as severe.  Tr. 45-46.  Plaintiff also stated that in general, her pain is

15   severe for the most of any given day.  Tr. 48.  Plaintiff testified that the pain causes

16   difficulties with her concentration.  *Id.*

17        Plaintiff stated that she had injections after her second surgery to help alleviate the

18   pain.  Tr. 49.  She stated that she did not notice a big difference from the injections.  *Id.*

19   Plaintiff testified that she takes Lyrica for her RSD.  Tr. 44.  As to her medication side

20   effects, Plaintiff testified that Lyrica causes swelling, an increase in her appetite, and

21   some confusion.  Tr. 51.  She stated that she was off Lyrica for a while when she ran out

22   of it, and that her confusion improved some during this period.  Tr. 51.

23        Plaintiff testified that she has asthma, hearing loss, sleep problems, and allergies.

24   Tr. 50.  Plaintiff testified that she has problems hearing people over the telephone and has

25   to ask people to repeat themselves several times.  Tr. 52.  Plaintiff stated that she has

26   tendinitis in her hands (Tr. 48), and that the tendinitis causes her hands to swell after

27   doing anything for too long, including, for example, writing a full paragraph (Tr. 53-54).

28   Plaintiff testified that using a cane and a walker has caused additional problems because

those devices require the continuous use of her hands.  Tr. 54.

Plaintiff testified that she last saw her treating orthopedist, Dr. John Ledington, M.D., in 2008, and that she last saw her other treating orthopedist, Dr. Rohrbough, in April 2009.  Tr. 57-58.  Since April 2009, Plaintiff testified that Dr. Bigler is the only physician she has been seeing, and that she has seen her about two to three times a year since May 2008.  Tr. 58-59.  Plaintiff testified that she does not have insurance and has been paying out-of-pocket to see Dr. Bigler.  Tr. 40.

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they are inconsistent with the RFC assessment.  Tr. 19.  In reaching this conclusion, the ALJ evaluated Plaintiff's testimony using the two-step analysis established by the Ninth Circuit. *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  Applying the test of *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), the ALJ first determined that Plaintiff's impairments could reasonably produce the symptoms alleged.  Tr. 19.  Given this conclusion, and because there is no evidence of malingering, the ALJ was required to present "specific, clear and convincing reasons" for finding Plaintiff not entirely credible. *Smolen*, 80 F.3d at 1281.  This clear and convincing standard "is the most demanding required in Social Security cases."  *Moore v. Comm'r of SSA*, 278 F.3d 920, 924 (9th Cir. 2002).

 "An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony, . . . a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of the pain." *Light v. SSA*, 119 F.3d 789, 792 (9th Cir. 1997) (citations omitted).  General assertions that the claimant's testimony is not credible are insufficient.  *See Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir.2007).  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id.* (quoting *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995)).  In weighing a claimant's credibility, the ALJ may consider some of the following factors:   claimant's reputation for truthfulness,

inconsistencies either in claimant's testimony or between her testimony and her conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, and the compatibility of claimant's testimony with the medical evidence. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *Lee v. Astrue*, 472 Fed. Appx. 553, 555 (9th Cir. 2012).

The ALJ rejected Plaintiff's testimony on three grounds. First, the ALJ examined the objective evidence of record and concluded that it did not support the extreme limitations alleged. Tr. 19-21. Plaintiff argues that the ALJ improperly rejected her subjective pain testimony due to a lack of supporting objective medical evidence (Doc. 12 at 6-7), and that the ALJ ignored objective evidence showing "continuing, consistent complaints of severe pain." Doc. 12 at 6. In general, Plaintiff argues that the ALJ's "[c]iting of periods of improvement with medical care when that improvement is shown, in the medical records, to be short lived is not a legitimate reason [to reject her pain complaints]." Doc. 12 at 7.

It is legal error for an ALJ to discount a claimant's pain testimony "solely because it is not corroborated by medical findings[,]" but a court may "evaluate the claimant's testimony in other ways." *Chavez v. Dep't of Health and Human Servs.*, 103 F.3d 849, 853 (9th Cir. 1996); *see also Light*, 119 F.3d at 792  ("An ALJ may not discredit a claimant's subjective testimony [because no objective medical evidence supports it]. To find the claimant not credible the ALJ must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between his testimony and his own conduct, or on internal contradictions in that testimony."). Accordingly, the Court will review the ALJ's other reasons for discounting Plaintiff's pain testimony before determining whether this basis constitutes legal error.

The ALJ's second reason for rejecting Plaintiff's pain testimony was her course of treatment. Tr. 21. Because Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual," the ALJ concluded that

1    "[Plaintiff]'s symptoms may not have been as serious as has been alleged." *Id.* Plaintiff

2    contends that the ALJ erred in rejecting her pain symptom testimony because she was

3    unable to afford the same level of care after losing her insurance. Doc. 12 at 7. The ALJ

4    acknowledged Plaintiff's loss of medical insurance, but noted that when Plaintiff did

5    elect to pay for treatment it did not concern her allegedly disabling impairments; instead,

6    the treatment was for mouth sores, medical refills, and urinary tract infections. *Id.* (citing

7    Tr. 863-63). This analysis does not constitute legal error. *See Lee*, 472 Fed. Appx. at

8    555 (citing *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (finding that an

9    "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed

10   course of treatment" is a valid basis to reject claimant testimony)). The ALJ reasonably

11   could conclude that Plaintiff would have chosen to obtain care related to her disabling

12   impairments, rather than these other matters, if the impairments were as severe as she

13   claims.

14          Third, the ALJ noted several inconsistencies in Plaintiff's statements:

15   (1) inconsistent reports about her functional limitations; (2) inconstant statements about

16   medication side-effects; (3) use of a cane without medical evidence suggesting one is

17   necessary; and (4) inconsistent statements about operating a motor vehicle. Tr. 21-22.

18   Plaintiff does not argue that the ALJ erred in considering these inconsistencies in

19   rejecting Plaintiff's subjective pain testimony, and the Court does not find error.

20   *See Thomas*, 278 F.3d at 958-59.

21          In light of these legally sufficient grounds for discrediting Plaintiff's subjective

22   pain testimony, the Court need not consider whether the ALJ erred in concluding that her

23   testimony was also inconsistent with objective medical evidence. *See Batson v. Comm'r*

24   *of SSA,* 359 F.3d 1190, 1197 (9th Cir. 2004) ("Because the ALJ considered the claimant's

25   testimony to be contradictory and unsupported by either the objective medical evidence

26   or any persuasive reports of his doctors, the district court did not err in affirming the

27   ALJ's determinations about [the claimant]'s credibility."). The ALJ provided clear and

28   convincing reasons, supported by substantial evidence, for discounting Plaintiff's

testimony.

**B.     Medical Opinion Evidence.**

"The ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see* 20 C.F.R. § 404.1527(c); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996).  The ALJ may reject the opinion of a treating or examining physician by making "findings setting forth specific legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas*, 278 F.3d at 957 (citation omitted).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating h[er] interpretation thereof, and making findings." *Id.*  "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Id.*  Further, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Id.*

Plaintiff argues that the ALJ failed to consider the opinion of her primary care physician, Dr. Bigler.  Doc. 12 at 8.  On May 17, 2010, Dr. Bigler completed a medical disability form indicating, among other limitations, that Plaintiff could sit a total of six hours in an eight-hour workday, but had to elevate her legs and walk around every 15-20 minutes.  Tr. 868.  The ALJ gave Dr. Bigler's opinion little weight for three reasons: (1) the assessment lacked medically sufficient diagnostic bases for the limitations assessed; (2) Dr. Bigler's assertion that Plaintiff must elevate her legs was without any support in the medical records; and (3) most of Plaintiff's care involving her knees and complex regional pain syndrome was with Dr. Rohrbough, and his reports did not reflect such limitations.  Tr. 24.  Plaintiff argues that "[a]lthough [Dr. Bigler]'s records do not specifically discuss the lower extremity issues with regard to the need for leg elevation, the doctor does have access to the prior treatment records."  Doc. 12 at 8.  Plaintiff also asserted that the medical records "consistently discuss complex regional pain syndrome," and that a May 2008 note from Dr. Bigler indicating that Plaintiff's swelling had greatly

decreased establishes that "the patient was having swelling prior to that note" and that "[i]t is medically reasonable with lower extremity swelling and complex regional pain syndrome that one would need stronger circulatory performance in the lower extremities, hence requiring leg elevation during prolonged sitting." *Id.* That Dr. Bigler's opinion may be "medically reasonable" does not mean it was error for the ALJ to have rejected the opinion. The ALJ rejected Dr. Bigler's opinion based on three specific and legitimate reasons, including a lack of supporting clinical findings. This does not constitute legal error. *See Thomas*, 278 F.3d at 957.

### C.    Misinterpretation of Evidence.

Plaintiff argues that the ALJ erred in interpreting and applying Dr. Rohrbough's opinions, to which the ALJ gave controlling weight. Doc. 12 at 5 (citing Tr. 23). In May 2008, Dr. Rohrbough opined that "[i]f any more improvement is realized, [Plaintiff] would be able to return to desk work only." Tr. 824. In October 2008, Dr. Rohrbough examined Plaintiff and his notes indicate that Plaintiff "continues to be plagued with classic signs of reflex sympathetic dystrophy/complex regional pain syndrome." Tr. 852. The notes include an assessment of Plaintiff's lumbar sympathetic block treatment with Dr. Ledington, and opine that "[i]t is extremely unusual and unfortunate for the patient to have a poor response to additional blocks after having such an excellent response to the first block. I don't have a good explanation for this at this time. . . . Active treatment options should be aggressively pursued in my opinion. If the dorsal column stimulator does not help, I would recommend referral to another pain specialist who does lumbar sympathetic injunctions, to see if we can get a better response." *Id.*

Plaintiff argues that "[t]hese statements would suggest that the doctor did not believe, at least through late 2008, that his patient [had] the capacity to return to any work." Doc. 12 at 5. But Plaintiff concedes that Dr. Rohrbough opined that Plaintiff was not able to work for a period less than one year because, in April 2009, Dr. Rohrbough completed a work capacities and limitations assessment indicating that Plaintiff was capable of performing some work. Tr. 848-49. This evidence does not meet the 12-

month duration requirement for an award of benefits.  *See Barnhart v. Walton*, 535 U.S. 212, 217-19 (2002) (recognizing a claimant is not disabled if "within 12 months after the onset of an impairment . . . the impairment no longer prevents substantial gainful activity." (quotation marks and citations omitted)).

In April 2009, Dr. Rohrbough's assessment form indicates that Plaintiff can sit for "6" hours and stand for "0" hours in an eight-hour workday.  Tr. 848.  The form also indicates that Plaintiff can sit 30 minutes at a time, and that she can stand in one place and walk for one to two hours at a time.  *Id.*  The ALJ interpreted the form as indicating that Plaintiff could stand and/or walk for two hours in an eight-hour workday.  Tr. 23. Plaintiff argues that the ALJ erred in rejecting Dr. Rohrbough's opinion that Plaintiff could stand for "0" hours in an eight-hour workday and submits that "[t]he ALJ does not differentiate, apparently between standing and walking. . . . [and that] walking and standing are actually two different functions causing different impacts on the body." Doc. 12 at 5.  The Court cannot find that the ALJ's interpretation of the evidence was error given Dr. Rohrbough's subsequent indication on the same assessment form that Plaintiff could stand in one place for one to two hours at a time.

Plaintiff also argues that the "ALJ fails to consider that the improvements were very short lived" and that "[t]he record is replete with complaints of ongoing pain from onset through 2010."  Doc. 12 at 6.  Specifically, Plaintiff points to a February 8, 2008, assessment by Kimberly Sargent, P.A.-C., releasing her to light duty work on March 10, 2008 (*id.* (citing Tr. 469)), and then a removal from that work release on April 4, 2008 (*id.* (citing T.R. 450)).  Additionally, Plaintiff points to February 15, 2007, industrial injury medical evaluation performed by Dr. James C. Nauman, M.D., Dr. Ernie Riffer, M.D., and Dr. Gerald Schwartzberg, M.D., in which the doctors opine that Plaintiff "is capable of returning to her usual and customary occupation with the only relatively minor restriction of avoiding repetitive kneeling and squatting."  *Id.* (citing Tr. 599).  Plaintiff argues that the ALJ must not have considered "that four months later [Plaintiff] underwent another knee surgery with the onset of RSD shortly thereafter."  *Id.*  This may

be true, but again, Plaintiff has failed to point to any error in the ALJ's reasoning and interpretation of the evidence.  Besides Dr. Bigler's opinion, Plaintiff has pointed to no medical source opinion supporting her allegation that she has been disabled since March 2006.  Instead of establishing disability, short-lived improvements can establish that a claimant was not disabled for a continuing 12-month period, and the ALJ's interpretation of the evidence in this manner does not constitute legal error.

### D.    ALJ's Duty to Develop the Record.

Plaintiff also asks the Court to "remand the case for additional evidence to determine continuing pain issues and additional vocational expert testimony on that pain evidence as well as testimony concerning the need to have elevation of legs which was not offered at hearing due to the assessment of Dr. Bigler being submitted post hearing." Doc. 12 at 9.  "The ALJ has a duty to develop the record . . . even when the claimant is represented by counsel."  *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).  The ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-460 (9th Cir. 2001) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)).  Plaintiff has not pointed to any ambiguous evidence, nor has Plaintiff established how the record is inadequate to allow for a proper disability determination.  This does not constitute legal error.

**IT IS ORDERED:**

1.    Defendant's administrative decision is **affirmed**.

2.    The Clerk is directed to enter judgment accordingly.

Dated this 20th day of May, 2013.

*David G. Campbell*

_____
David G. Campbell
United States District Judge

- 11 -